**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CENTURY SURETY COMPANY,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIV. ACTION NO.** |
| | § | |
| **MARKEL INTERNATIONAL** | § | |
| **INSURANCE COMPANY LIMITED** | § | |
| **COLGATE OPERATING, LLC,** | § | |
| **TRIANGLE ENGINEERING LLC,** | § | |
| **JEROMY MILLER AND** | § | |
| **ANAI MILLER** | § | |
| **Defendants.** | | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, Century Surety Company, and files this Original Complaint for Declaratory Judgment against Defendants, Markel International Insurance Company Limited, Colgate Operating, LLC, Triangle Engineering, LLC, Jeromy Miller, and Anai Miller and would show the Court the following:

**I.**
**PARTIES**

1.      Plaintiff, Century Surety Company ("Century"), is a corporation domiciled in Ohio, with its principal place of business in Michigan.  Century is an insurer licensed to transact business in the State of Texas.

2.      Defendant Markel International Insurance Company Limited ("Markel") is a foreign insurance company with its principal place of business in London, England.  Markel can

be served domestically through any senior partner at Mendes & Mount, 750 Seventh Avenue, New York, N.Y. 10019-6829.

3.     Defendant Colgate Operating, LLC ("Colgate") is a Delaware limited liability company with its principal place of business in Midland, Texas.  Diversity of citizenship for purposes of limited liability companies is determined by the citizenship of their members. Colgate has one member: Colgate Energy Partners III, LLC, which is also a Delaware limited liability company.  Colgate Energy Partners III, LLC has one managing member: CEP III Holdings, LLC, which is also a Delaware limited liability company.  CEP III Holdings, LLC has seven members: William M Hinkey III, James H Walter, William J. Quinn, A. Chris Aulds, Stewart Coleman, David Levinson and Craig S. Glick.  All are citizens of the State of Texas. Colgate can be served through its agent for service of process Robert R. Shannon at 300 North Marienfeld Street, Suite 1000, Midland, Texas 79701.

4.     Defendant Triangle Engineering, LLC ("Triangle") is an Oklahoma limited liability company with its principal place of business in Oklahoma.  Diversity of citizenship for purposes of limited liability companies is determined by the citizenship of their members.  Upon information and belief, all of Triangle's members including the managing member, Bryson Davis, are citizens of the State of Oklahoma.  Triangle can be served through its registered agent DBW Consulting, Inc., 4521 NW 3rd Street, Oklahoma City, 73127.

5.     Defendant Jeromy Miller ("Miller") is an individual citizen of the State of Texas residing in Abilene, Taylor County, Texas.  Jeromy Miller can be served at his residence at 660 3rd Street, Hawley, Texas 79525.

6.      Defendant Anai Miller ("Ms. Miller") is an individual citizen of the State of Texas residing in Abilene, Taylor County, Texas.  Anai Miller can be served at her residence at 660 3rd Street, Hawley, Texas 79525.

**II.**
**JURISDICTION AND VENUE**

7.      The jurisdiction of this Court exists under 28 U.S.C. §1332 of the Federal Rules of Civil Procedure based upon the diversity of citizenship of Plaintiff and Defendants, and the amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

8.      Venue is properly maintained in this Court because it is the judicial district where a substantial part of the events and omissions giving rise to the claims occurred and in which the underlying state court lawsuit that is the basis of this suit is pending.

**III.**
**UNDERLYING LAWSUIT**

9.      Defendants Jeromy and Anai Miller ("the underlying plaintiffs") filed their Original Petition against numerous parties in a case styled as: *Jeromy Miller and Anai Miller v. Colgate Energy, LLC, Colgate Energy GP, LLC Colgate Energy Partners, LLC*, *Colgate Energy Partners I, LLC, Colgate Energy Partners II, LLC, Colgate Operating, LLC, Triangle Engineering, LLC, Brian Bell, Longstring Pipe & Supply, and Rudy Montoya* Cause No. 20-04-23492-CVR, in the 143rd Judicial District Court of Reeves County, Texas ("the Underlying Lawsuit").

10.     In the Underlying Lawsuit, the underlying plaintiffs allege that Mr. Miller was performing work for Black Star Energy Services ("Black Star") delivering pipe racks to Colgate IWOJIMA 26-14.  Defendant Triangle was acting as "well site supervisor (consultant)" through its contract with Defendant Colgate.  Defendant Triangle's independent contractor Brian Bell

was assisting Mr. Miller in unloading pipe racks when the pipe racks fell from a flatbed trailer and severely injured Mr. Miller.

11.     Mr. Miller and his wife, Defendant Anai Miller, sued Triangle, Bell, Colgate, and several additional Colgate entities as well as other parties that were involved in the loading or unloading of the pipe racks.  The underlying plaintiffs allege negligence against each underlying defendant as well as negligent activity against the Colgate entities.

12.     The underlying plaintiffs seek damages for (a) physical pain in the past and future, (b) mental anguish in the past and future, (c) scarring and disfigurement, (d) physical impairment, (e) medical expenses, (f) lost wages, (g) lost earning capacity, (h) loss of consortium, (i) loss of household services and (j) any other recoverable costs.

## IV.
## CONTRACT BETWEEN TRIANGLE & COLGATE

13.     Colgate Operating, LLC and Triangle entered a Master Service/Sales Agreement ("MSA") on April 29, 2017.  In the MSA, Colgate was defined as "Company" and Triangle was defined as "Contractor."  The MSA contained the following relevant provisions:

13)     Indemnities.

(a)     In the event maritime law is not applicable to a transaction governed hereby, and in the further event the provisions of the Texas anti-indemnity statute (Tex. Civ. Prac. & Rem. Code Ann. §127.001 et seq.) or the New Mexico anti-indemnity statute (N.M. Stat. Ann. §56-7-I et seq.) arc applicable to a particular transaction, the following mutual indemnity provisions wilt govern that transaction:

. . .

(ii) COMPANY AGREES TO AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR, CONTRACTOR'S CONTRACTORS AND SUBCONTRACTORS, AND CONTRACTOR'S DIRECTORS, OFFICERS, OWNERS. EMPLOYEES, AGENTS, PARENT, AFFILIATES AND SUBSIDIARIES, DIRECT AND REMOTE (hereinafter the "CONTRACTOR GROUP") FROM AND AGAINST ALL CLAIMS, DEMANDS, CAUSES OF ACTION AND LIABILITY OF EVERY KIND AND CHARACTER (INCLUDING ALL EXPENSES OF LITIGATION, COURT

COSTS, AND ATTORNEYS' FEES), THAT MAY BE MADE OR ASSERTED BY COMPANY, COMPANY'S CONTRACTOR'S AND SUBCONTRACTORS, OR COMPANY'S DIRECTORS, OFFICERS EMPLOYEES OR AGENTS, ARISING OUT OF, RESULTING FROM OR IN ANY WAY INCIDENTAL TO, DIRECTLY OR INDIRECTLY, TRANSACTIONS SUBJECT TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO THOSE ACTUALLY OR ALLEGEDLY CAUSED BY THE FAULT OR STRICT LIABILITY OF THE CONTRACTOR GROUP, THE UNWORTHINESS OF ANY VESSEL, CRAFT OR PLATFORM, OR THE SOLE OR CONCURRENT NEGLIGENCE OF ONE OR MORE MEMBERS OF THE CONTRACTOR GROUP). This indemnification obligation shall be supported by insurance to be provided by Company with policy limits equal to the lesser of (1) the limits of liability prescribed for Comprehensive General Liability insurance in part (B) of Exhibit (A) attached hereto, or (2) the maximum amount which may be required by law, if any, without rendering this mutual indemnification obligation void, unenforceable or otherwise inoperative. The insurance provided in support of these indemnity obligations shall, however, in no way limit Company's indemnity obligations hereunder save and except to the extent necessary, if any, to prevent said indemnification obligations from being declared void, unenforceable or otherwise inoperative.

* * *

## EXHIBIT A TO MASTER SERVICE/SALES AGREEMENT
### Minimum Insurance Requirements
### Land Only Operations

Contractor shall purchase and maintain in full force and effect at all times during the term of this contract, from insurance providers acceptable to Company, policies providing the types and limits of insurance indicated below, which shall be regarded as a minimum and shall be primary as to any other existing, valid and collectable insurance.

. . .

To protect Colgate Operating, LLC against liability, loss, or expense from damage to property or injury to any person arising out of, in connection with or resulting from the work provided for hereunder, Contractor shall, during the progress of the work, carry at its own expense, on forms and in reliable insurance companies authorized to do business in the state or area in which the work is to be performed hereunder, the following minimum coverages:

. . .

B.      Comprehensive General Liability Insurance, with limits of liability of not less than the following:

$5,000,000 general aggregate
$5,000,000 each occurrence, Bodily Injury and/or Property Damage Combined Single Limit

**V.**
**MARKEL POLICIES ISSUED TO COLGATE**

14.     Markel issued to Colgate Energy, LLC a commercial general liability insurance policy for the period between September 1, 2019 to September 1, 2020, bearing policy numbers JCGL101844 and policy limits of $1,000,000 per occurrence/$1,000,000 personal and advertising injury/$2,000,000 products-completed operations aggregate limit/$2,000,000 general aggregate ("the Markel primary policy").  The Markel primary policy contains a Named Insured Schedule that includes "Colgate Operating, LLC" as a named insured.  The Markel primary policy provides the following relevant provisions:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums in excess of the "***self-insured retention***" that the insured becomes legally obligated to pay as damages because of "***bodily injury***" or "***property damage***" to which this COVERAGE A applies.  We will have the right and duty to defend the insured against any "***suit***" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "***bodily injury***" or "***property damage***" to which this insurance does not apply.

    We may, at our discretion, investigate any "***occurrence***" and settle any claim or "***suit***" that may result.  But:

    **(1)**     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C, or "***pollution clean-up costs***" under COVERAGE D.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

**b.** This insurance applies to "*bodily injury*" and "property damage" only if:

> **(1)** The "*bodily injury*" or "*property damage*" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "*bodily injury*" or "*property damage*" occurs during the policy period; and
>
> **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "*employee*" authorized by you to give or receive notice of an "*occurrence*" or claim knew that the "*bodily injury*" or "*property damage*" had occurred, in whole or in part.  If such a listed insured or authorized "*employee*" knew, prior to the policy period, that the "*bodily injury*" or "*property damage*" occurred, then any continuation, change or resumption of such "*bodily injury*" or "*property damage*" during or after the policy period will be deemed to have been known prior to the policy period.

. . .

**2.**   **Exclusions**

This insurance does not apply to:

. . .

**b.**   **Contractual Liability**

"*Bodily injury*" or "*property damage*" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**1.**   That the insured would have in the absence of the contract or agreement;

or

**2.**   Assumed in a contract or agreement that is an "*insured contract*",

provided the "*bodily injury*" or "*property damage*" occurs subsequent to

the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "***insured contract***", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "***bodily injury***" or "***property damage***", provided:

    **a.**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "***insured contract***", and

    **b.**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

## SECTION V – DEFINITIONS

. . .

"***Insured contract***" means:

. . .

**f.**    That part of any written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality and an indemnification of a railroad in connection with construction or demolition operations by or for the insured) under which you assume the liability of another party to pay for "***bodily injury***" or "***property damage***" to a third person or organization.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)**    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)**    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)**    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

or

> **(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(1)** above and supervisory, inspection, architectural or engineering activities.

* * *

15. Markel issued an excess policy to Colgate Energy, LLC, bearing policy number JUMB101585, with $75,000,000 per occurrence and $75,000,000 aggregate limits ("the Markel excess policy") during the same policy period as the Markel primary policy. The Markel excess policy states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

> **a.**    Subject to all of the terms and conditions of this policy, we will pay on behalf of the insured, those damages or "***pollution clean-up costs***" covered by this policy in excess of the total applicable limits of "***underlying insurance***". The terms and conditions of "***underlying insurance***" are made a part of this policy, except with respect to:
>
> > **(1)** Any contrary provision contained in this policy; or
> >
> > **(2)** Any provision in this policy for which a similar provision is not contained in "***underlying insurance***".

***

**VI.**
**HALLMARK AND CENTURY POLICIES ISSUED TO TRIANGLE**

16. Hallmark National Insurance Company ("Hallmark") issued to Triangle a commercial general liability insurance policy for the period between October 5, 2019 to

October 5, 2020, bearing policy numbers E35800087-1 and policy limits of $1,000,000 per occurrence/$1,000,000 personal and advertising injury/$2,000,000 products-completed operations aggregate limit/$2,000,000 general aggregate ("the Hallmark policy").

17.     Century issued to Triangle a Commercial Excess Liability Coverage Policy with the same policy period as the Hallmark policy, bearing policy number CCP863550 and policy limits of 5,000,000 per occurrence and 5,000,000 aggregate.

## VII.
## JUSTICIABLE INTEREST

18.     In a reservation of rights letter sent to Defendant Triangle on September 24, 2021, Markel declared its position that Markel's obligation to pay for Colgate's contractual indemnity owed to Triangle is limited to $5,000,000 under the MSA.  Century's position is that the MSA in conjunction with the Markel primary and excess policy create an obligation for Colgate, and ultimately Markel, to indemnify Triangle up to the full $76,000,000 limits of the Markel primary and excess policies.

19.     Century seeks a declaration as to Markel's and Colgate's duties and obligations owed to Century's insured, Triangle, under the MSA for the Underlying Lawsuit.  All persons having an interest in the outcome of this litigation have been joined as parties.

20.     An actual controversy therefore exists between the parties hereto pursuant to 28 U.S.C. §2201 et seq., and Rule 57 of the Federal Rules of Civil Procedure, and this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint.

## VIII.
## COUNTS

**A.**      **Count I – Declaratory Judgment – Markel Policies Provide Total 76 Million Dollar Limits in Coverage**

21.      Century alleges and incorporates by reference the allegations found in paragraphs 1 to 20 above.

22.      The MSA between the Colgate and Triangle states that Colgate agrees to indemnify and hold harmless Triangle from and against all claims that may be made by Colgate's contractors, subcontractors, and agents against Triangle.

23.      Defendant Jeromy Miller was an employee of Black Star, a Colgate contractor, subcontractor, or agent.  As such, Colgate has a contractual obligation under the MSA to indemnify Triangle for Triangle's liability in the Underlying Lawsuit.

24.      Colgate Operating, LLC is a named insured under the Named Insured Schedule of the Markel primary policy issued to Colgate Energy, LLC.

25.      Under the Markel primary policy, Markel does not cover liability for "bodily injury" assumed in a contract unless the contract is an "insured contract" within the meaning of the policy.  Markel will pay sums that Colgate becomes legally obligated to pay as damages because of "bodily injury" assumed in an "insured contract."  An "insured contract" is a written contract or written agreement "under which [Colgate] assume[s] the liability of another party to pay for "***bodily injury***" or "***property damage***" to a third person or organization."

26.      Colgate's contractual obligation in the MSA to indemnify Triangle for any claim made by Colgate's employees or subcontractors, regardless of Triangle's fault, is an assumption of Triangle's tort liability.  Thus, the MSA qualifies as an "insured contract" under Colgate's primary and excess policy with Markel.  As a result, Colgate's contractual obligation to pay for Triangle's liability in the Underlying Lawsuit is covered under the Markel primary policy.

27.     Because Colgate's contractual indemnity obligation under the MSA is covered by the Markel primary policy and there are no terms in the Markel excess policy that replace or contradict the terms regarding coverage liability for "bodily injury" assumed by the insured in an "insured contract," Colgate's contractual indemnity obligation to Triangle under the MSA is also covered under the Markel excess policy.

28.     As both the Markel primary and excess policies provide coverage for Colgate's contractual indemnity obligation to Triangle up to the limits of both policies, Century—as an insurer for Triangle—is entitled to a declaration that the Markel primary and excess limits are due and available up to their respective occurrence limits to indemnify Triangle (via its contractual indemnity rights against Colgate) for any judgment in the Underlying Lawsuit.

**B.     Count II – Declaratory Relief – Priority of Coverage**

29.     Century alleges and incorporates by reference the allegations found in paragraphs 1 to 28 above.

30.     The MSA requires Colgate to indemnify Triangle for the claims in the Underlying Lawsuit.  Due to the MSA risk transfer provisions, any liability against Triangle from the Underlying Lawsuit is first covered by the Markel primary and excess policies.  Only when the Markel primary and excess policy are exhausted would Hallmark and then Century's responsibility for the loss be triggered.

31.     Because of the risk transfer provisions in the MSA, Century is entitled to a declaration that the priority of coverage for Triangle's liability in the Underlying Lawsuit is as follows:

a.      The Markel primary policy bearing policy numbers JCGL101844 with per occurrence limits of $1,000,000;

b.     The Markel excess policy bearing policy number JUMB101585 with per occurrence limits of $75,000,000;

c.     The Hallmark policy bearing policy numbers E35800087-1 with per occurrence limits of $1,000,000; and

d.     The Century excess policy bearing policy number CCP863550 with per occurrence limits of $5,000,000.

## IX.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Century Surety Company, pray for judgment as follows:

**A.**     Markel owes up to its primary and excess limits of $76,000,000 to indemnify Triangle in the Underlying Lawsuit;

**B.**     The priority of coverage for Triangle in the Underlying Lawsuit is the Markel primary policy, the Markel excess policy, the Hallmark policy, and then the Century policy; and

**C.**     Century shall be awarded such other and further relief, legal or equitable, general or specific, to which Century may show itself to be justly entitled.

Respectfully Submitted,

By: */s/ Robert J. Witmeyer*
     **ROBERT J. WITMEYER**
     State Bar No. 24091174
     Email:  Rob.Witmeyer@cooperscully.com

     **COOPER & SCULLY, P.C.**
     900 Jackson Street, Suite 100
     Dallas, Texas 75202
     Telephone:  (214) 712-9500
     Telecopy:   (214) 712-9540

     **ATTORNEYS FOR PLAINTIFF,**
     **CENTURY SURETY COMPANY**


## CERTIFICATE OF SERVICE

Pursuant to W.D. Tex. Loc. R. 5.1(a) and Fed. R. Civ. P. 5(b)(2)(E), the undersigned counsel hereby certifies that on this the 25th day of March, 2022, the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to opposing counsel of record.

     */s/ Robert J. Witmeyer*
     **ROBERT J. WITMEYER**